**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Carl Hunter SMITH a/k/a "Smitty", and
Elmer Louis Posick, Defendants-
Appellants.**

**No. 73-2158.**

United States Court of Appeals,
Fifth Circuit.

Oct. 17, 1974.

---

Richard M. Gale, Miami, Fla., for Smith.

Maynard A. Gross, S. Miami, Fla., for Posick.

Robert W. Rust, U. S. Atty., J. Daniel Ennis, Harold F. Keefe, Asst. U. S. Attys., Miami, Fla., for plaintiff-appellee.

Before BROWN, Chief Judge, and WISDOM and MORGAN, Circuit Judges.

JOHN R. BROWN, Chief Judge:

Appellants Carl Hunter Smith, a/k/a "Smitty", and Elmer Louis Posick [1] were jointly indicted and convicted on two counts of receiving, concealing, storing, bartering, and selling seven diesel engines, and conspiring to do so knowing the engines were stolen in violation

---

1. Kenneth Jones, a/k/a Ken Volarro, and Leo Giuliano were also indicted along with appellants on identical counts. Kenneth Jones was found guilty and has not appealed his conviction. The indictment was dismissed as to Leo Giuliano.

of 18 U.S.C.A. §§ 2315 and 371 [2]. On appeal Smith and Posick argue two grounds for reversal: (i) there was insufficient evidence to support their convictions, and (ii) the District Judge committed plain error in his charge to the jury.

■ As to both appellants we find, without considering any trial court error, that there was sufficient evidence to sustain their convictions on both counts. We also find that the Court's charge was indeed erroneous. The evidence against Appellant Smith, however, although substantial enough to support a guilty verdict standing alone, is not so overwhelming that a significantly erroneous jury charge could not have seriously prejudiced the verdict. We conclude therefore that this was plain error requiring reversal as to him. Although the evidence against Appellant Posick was very substantial so that there is not much likelihood that the instruction error induced the verdict of guilt, we find it unsatisfactory to condemn the charge, allow one to be retried because of it, while holding other to the verdict which impliedly responded to the Court's charge. We therefore reverse and remand as to each.

On November 25, 1972, several persons [3] furtively stole from the Ingersoll-Rand Company in Clarksville, West Virginia, eight new diesel engines having a total cost value to Ingersoll-Rand of approximately $38,000 or about $4,640 per engine. The theft was not discovered nor the police notified until two days later after a stock inventory had been taken.[4]

The next event that took place occurred on November 28, 1972, three days after the theft, in Hallendale, Florida at the Terrace Paint & Body Shop. Appellant Smith, owner of the Shop, was asked by his friend and employee, Appellant Posick for a short-term loan of $8,500 with which to purchase some diesel engines. Posick stated that he already possessed $5,500 but that he needed the additional $8,500 to complete the transaction. Appellant Smith had on two other occasions loaned his friend Posick moderate sums of money for various reasons both personal and business and had always been repaid promptly. In addition, Appellant Smith was a man of some means operating a $300,000 a year business, and a loan of $8,500 to someone he knew and trusted was not excessive.

Approximately three weeks after the theft, a second conversation took place in Hallendale, Florida, between Kenneth Jones [5] and his employer, Leo Giuliano owner of a boat shop. Jones asked Giuliano if he would be interested in purchasing a diesel engine for a 32-foot boat Jones knew Giuliano was construct-

2. 18 U.S.C.A. §§ 2315 and 371 read in pertinent part:

§ *2315. Sale or receipt of stolen goods, securities, moneys, or fraudulent State tax stamps.*—Whoever receives, conceals, stores, barters, sells, or disposes of any goods, wares, or merchandise, securities, or money of the value of $5,000 or more, or pledges or accepts as security for a loan any goods, wares, or merchandise, or securities, of the value of $500 or more, moving as, or which are a part of, or which constitute interstate or foreign commerce, knowing the same to have been stolen, unlawfully converted, or taken

. . . .

Shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

§ *371. Conspiracy to commit offense or to defraud United States.*—If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

3. The persons responsible for the theft were later determined to be Ernest Dean, Mooker Dean, a man named "Coffey", a man named "Slim", and an employee of the Ingersoll-Rand Company, Jackson Riley.

4. Normally an inventory would not have been taken until several weeks after the theft, but an alert employee noticed the empty spaces where the engines had been and notified his supervisor.

5. See note 1, *supra*.

ing, or if Giuliano knew someone interested in buying seven diesel engines for a total purchase price of $19,500. Although the price was right, Giuliano had no use for the engines but suggested Jones contact a friend of his, Mr. Herbert Vandervan, a General Motors dealer in diesel engines. After being contacted and quoted the asking price, Mr. Vandervan was indeed interested and a meeting was arranged for the following day.

When Vandervan arrived at the meeting the following day, present were not only Jones and Giuliano but also Appellant Posick. When asked to see the engines, Smith and Appellant Posick took Mr. Vandervan to a storage yard for damaged cars and exhibited one of the engines being kept in a U-haul trailer. Vandervan asked for and received the engine's serial number in order to floorplan the sale. Several days later, when attempting to arrange a buy-back agreement with General Motors, Vandervan was told that an engine bearing the serial number in question had been stolen. Vandervan was then contacted by FBI agents and told to say nothing concerning his knowledge of the stolen nature of the engine.

On December 20, 1972, FBI Special Agent Walton entered the fray posing as an acquaintance of Mr. Vandervan and a wealthy South American buyer of diesel engines. After being introduced to Jones and engaging in some preliminary negotiations, it was agreed that Jones would deliver seven of the diesel engines to Agent Walton that afternoon for a total price of $22,000. That afternoon, however, Agent Walton was informed by Jones through Giuliano that the deal was off because he was being followed by what he suspected were federal agents.

In an apparent attempt to obtain more information as to why the sale was cancelled, Giuliano attempted to telephone Appellant Posick at the Terrace Paint & Body Shop. Jones had previously given Giuliano the Shop's telephone number through which Giuliano was told he could reach Appellant Posick. Being unable to locate Appellant Posick by telephone, he then drove to the Shop in an effort to talk with him in person. Posick was not to be found. Giuliano did, however, find Appellant Smith who reiterated that Jones had been followed by several agents in telephone company vehicles and that the sale was cancelled. Appellant Smith also stated that he had a friend in the local police department who would trace license plate numbers for him which is how he knew federal agents using telephone company vehicles had been following Jones.

The next morning after talking with Agent Walton (in his undercover capacity) who indicated he still wished to consummate the sale, Giuliano again telephoned the Terrace Paint & Body Shop. He told Appellant Smith that Agent Walton was still interested in the sale and Appellant Smith gave Giuliano a telephone number through which Agent Walton was to contact Appellant Smith for further negotiations. Appellant Smith also stated that the engines were his and he could do with them as he liked.

On December 22, 1972, Agent Walton dialed the telephone number given him by Giuliano and made contact with Appellant Smith. Smith told Agent Walton he was the owner of the engines, that Agent Walton should deal directly with him, and that he could furnish Agent Walton with the proper transfer papers. It was arranged that the transaction should be consummated on December 26.

On December 26, Agent Walton met Appellants Smith and Posick at the Terrace Paint & Body Shop and was told they would have to proceed to a separate location to view the engines. During their conversation, Agent Walton inquired of Appellants Smith and Posick if there was any area in the country where the engines should not be sold. Appellant Smith replied that they should not be sold "up North". Appellant Posick and Agent Walton then departed for the location of the engines in separate cars, Appellant Posick stopping to pick

up Jones on the way. The stolen engines were located approximately eight miles from the Shop in a King Rental Truck that had been leased by Jones. The property where the truck had been parked was owned by a friend of Appellants Smith and Posick who had given Appellant Smith permission to use the lot for storing what Appellant Smith represented would be an empty pick-up truck. Soon after Appellant Posick, Jones, and Agent Walton arrived to inspect the engines, federal agents moved in and made their arrests. Found on Appellant Posick at the time of his arrest was a piece of paper upon which was written the name "Slim, W. Va.".

### Sufficiency Of Evidence

The appellants first assert that there was insufficient evidence presented by the Government under the substantive count to prove that the appellants knew the engines were stolen, and, under the conspiracy count, to prove the appellants knew the engines had been stolen from interstace commerce.

■ In reviewing sufficiency of the evidence, we must, of course, examine the evidence, taking a view most favorable to the Government, Glasser v. United States, 1942, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680; United States v. Stephenson, 5 Cir., 1973, 474 F.2d 1353, 1355. Moreover, since much of the evidence presented supporting the guilty verdicts was circumstantial, the inferences reasonably to be drawn by the jury from such evidence must be consistent with guilt as well as inconsistent with every reasonable hypothesis of innocence. Montoya v. United States, 5 Cir., 1968, 402 F.2d 847.

■ With these considerations in mind, we think that there was more than ample evidence to prove Appellant Posick had the requisite guilty knowledge as to the substantive count of the offense. In Appellant Posick's case, his claim of insufficiency of the evidence to prove such knowledge could be rejected simply on the basis of the long established rule that:

> Possession of the fruits of crime, recently after its commission, justifies the inference that the possession is guilty possession, and, though only *prima facie* evidence of guilt, may be of controlling weight, unless explained by the circumstances or accounted for in some way consistent with innocence.

Wilson v. United States, 1896, 162 U.S. 613, 619, 16 S.Ct. 895, 898, 40 L.Ed. 1090, 1095; see Barnes v. United States, 1973, 412 U.S. 837, 93 S.Ct. 2357, 37 L. Ed.2d 380; United States v. Sellers, 5 Cir., 1973, 483 F.2d 37, petition for cert. filed, 417 U.S. 908, 94 S.Ct. 2604, 41 L. Ed.2d 212 (1973); United States v. Gordon, 5 Cir., 1970, 421 F.2d 1068, cert. denied, 1970, 398 U.S. 927, 90 S.Ct. 1816, 26 L.Ed.2d 89; Hale v. United States, 5 Cir., 1969, 410 F.2d 147, cert. denied, 1969, 396 U.S. 902, 90 S.Ct. 216, 24 L.Ed.2d 179.

It was undisputed at trial that Appellant Posick exercised actual if not constructive possession over the stolen engines less than three weeks after their theft. Moreover, Appellant Posick was directly involved in selling the engines for a little over half their retail value, a strong indication by itself that in the eyes of the jury he knew or recklessly closed his eyes to the fact that the engines were stolen. Such evidence, when added to the surreptitious negotiations of which he was an undisputed part and his proven knowledge that the original deal had been cancelled because a fellow co-conspirator had been followed by federal agents, is certainly sufficient to warrant the jury finding beyond a reasonable doubt that Appellant Posick had the requisite guilty knowledge. The fact that Mr. Vandervan was willingly given the serial numbers to all the engines by Jones with Appellant Posick's tacit consent does not alter our perspective. Although this could be an action taken by men with nothing to hide, it is also possible that Jones and Appellant

Posick thought the theft in West Virginia was too far removed from their dealings in Florida, or that the theft had not been discovered or reported as of that date, or that Vandervan's suspicions would be put to rest by such an audacious action. This one piece of evidence, from which the jury was entitled to draw any reasonable inference, does not by itself in our opinion create any reasonable doubt as to Appellant Posick's guilty state of mind.

■ The evidence presented against Smith, although not nearly as overwhelming or convincing, is in our opinion still sufficient to sustain a finding of knowledge that the engines had been stolen. To rebut the inference of recent unexplained possession of stolen goods as evidence of guilt, Appellant Smith offered the explanation that the reason the engines were in his possession was because of his $8,500 investment which he was attempting to protect by negotiating a sale of the engines. The jury, of course, was entitled to give this explanation whatever credibility it felt it merited. Simply because Appellant Smith attempted to explain why he was in recent possession of the stolen engines after the theft does not necessarily overcome the permissible inference of guilty knowledge.[6]

There still remains the virtually uncontested evidence in the record that Appellant Smith attempted to sell the engines to a federal agent at nearly a 50% discount, surreptitiously stored the engines on property of a friend while pretending to store an empty truck, and had another friend check police records to determine whether the persons following his confederate (Jones) were federal agents. Additionally, the jury could certainly have attributed guilty knowledge to Appellant Smith from his remark to Agent Walton that he should not sell the engines "up North". The jury well may have believed that Appellant Smith, knowing the engines had been stolen in West Virginia, wanted to prevent them from being resold in that area.

■ Likewise, the appellants' claims of insufficiency of the evidence to prove that they knew the engines were stolen in interstate commerce under the conspiracy count must fall. In the first place, we do not agree with the appellants that actual knowledge under a conspiracy count must be proved.[7] This Court has on many occasions rejected such a contention stating that to be guilty of a conspiracy to receive stolen property one need only "reasonably anticipate that the property might be embezzled or stolen while in the course of interstate transportation . . . ." Also, "[T]here may be an implied understanding that the property could be embezzled or stolen from any source that might prove convenient or accessible, and that would include an interstate shipment." Clark v. United States, 5 Cir., 1954, 213 F.2d 63, 65; see United States v. Iacovetti, 5 Cir., 1972, 466 F.2d 1147, cert. denied, 1973, 410 U.S. 908, 93 S.Ct. 963, 35 L.Ed.2d 270; United States v. McGann, 5 Cir., 1970, 431 F.2d 1104, cert. denied sub nom., Pruitt v. United States, 1971, 401 U.S. 919, 91 S. Ct. 904, 27 L.Ed.2d 821.

---

6. Of course, the mere fact that there is some evidence tending to explain a defendant's possession consistent with innocence does not bar instructing the jury on the inference. The jury must weigh the explanation to determine whether it is "satisfactory." Ante, n. 3. The jury is not bound to accept or believe any particular explanation any more than it is bound to accept the correctness of the inference. But the burden of proving beyond a reasonable doubt that the defendant did have knowledge that the property was stolen, an essential element of the crime, remains on the Government.
Barnes v. United States, 1973, 412 U.S. 837, 845, n. 9, 93 S.Ct. 2357, 2362, 37 L.Ed.2d 380, 387.

7. The appellants rely upon United States v. Vilhotti, 2 Cir., 1971, 452 F.2d 1186, cert. denied, 1972, 406 U.S. 947, 92 S.Ct. 2051, 32 L.Ed.2d 335, to support their proposition that the Government must prove actual knowledge of the interstate character of the theft in a conspiracy count.

We are convinced under these standards that the same evidence which has proved sufficient to sustain a jury finding as to guilty knowledge with respect to the substantive count will serve to sustain a finding that the appellants knew the engines were likely to have been stolen in interstate commerce under the conspiracy count. In Appellant Posick's case, there was additional evidence tending to confirm a finding of guilty knowledge of the interstate nature of the theft in the form of the slip of paper found on him after his arrest upon which were written the words "Slim, *W. Va.*"[8] (emphasis added).

### The Court's Charge

A more serious problem, however, is presented by the appellant's contention that the Court's charge was so erroneous as to have constituted plain error under Fed.R.Crim.P. 52.[9]

The portion of the charge now attacked is as follows:

The word "stolen" means any wrongful or dishonest taking whereby a person obtains property belonging to another without or beyond any permission given, with the intent to deprive the owner of the rights and benefits of the ownership. It is not necessary that the taking of the diesel engines be unlawful. Even if the possession is lawfully acquired the engines must be deemed "stolen" if the defendant thereafter forms the intent to deprive the owner of the rights and benefits of ownership, and converts the engines to his own use.[10]

The charge is clearly incorrect for several reasons. One reason is that the jury could infer from the erroneous charge that the appellants were charged with being involved in the actual *theft*, an inference that would be clearly impermissible where the appellants were in fact charged with *receiving* stolen property. Another reason is that the erroneous charge could permit a jury to find that the appellants might be guilty of the offenses even if they lawfully acquired the engines with no knowledge whatsoever that they had been stolen. This would be a more dangerous inference and one which would potentially destroy the possibility of a fair trial.

The essential question of us, of course, is whether this contested part of the charge is so erroneous that when considered in the totality of the charge as a whole and the evidence presented against each appellant, the error is so great as to result in the likelihood of a grave miscarriage of justice. Bearden v. United States, 5 Cir., 1968, 403 F.2d 782, cert. denied, 1969, 393 U.S. 1111, 89 S.Ct. 920, 21 L.Ed.2d 809. Logically it is impossible to justify the charge on the possibility that it was not harmful. It simply referred to a distinctly different situation or crime. It permitted the jury to conclude that each must be found guilty even though, on the hypothesis posed, in the charge the initial innocent possession somehow became unlawful when they decided to convert the engines to their own use. This did away with the need for knowingly possessing with knowledge of their stolen character. The charge could have made a finder an interstate possessor merely by deciding to put the thing to his own use.

There were no technical slips-of-the-tongue. The charge just changed everything. Neither appellant was tried fi-

---

8. "Slim" was the name attributed to one of the persons who originally stole the engines in West Virginia.

9. No objection was made to the charge by any of the appellants at trial and thus under Fed.R.Crim.P. 30, the erroneous instruction must rise to the level of plain error before constituting grounds for reversal.

10. This charge appears to be patterned after a model charge on the definition of a stolen motor vehicle under the Dyer Act, 18 U.S. C.A. § 2312 as found in 1 Devitt & Blackmar, Federal Jury Practice and Instructions § 37.04. The instruction would apply, for example, to a rental car or borrowing situation where the lessee or bailee lawfully obtained possession of the vehicle but thereafter formed the intent to unlawfully convert it to his or her own use.

nally on the theories permitted. Such a trial is manifestly unfair and a condition which we must remedy by new trial.

Reversed and remanded.