UNITED STATES of America, Plaintiff-Appellee,

v.

Jeffrey Roy BRASSEAUX, Defendant-Appellant.

No. 74–2882.

United States Court of Appeals, Fifth Circuit.

March 5, 1975.

Rehearing and Rehearing En Banc Denied April 3, 1975.

James A. McPherson, New Orleans, La., for defendant-appellant.

Douglas M. Gonzales, U.S. Atty., Baton Rouge, La., James D. Carriere, Special Asst. U.S. Atty., New Orleans, La., Stephen A. Mayo, Asst. U.S. Atty., Baton Rouge, La., for plaintiff-appellee.

Before THORNBERRY, COLEMAN and ROSENN *, Circuit Judges.

THORNBERRY, Circuit Judge:

J. Roy Brasseaux appeals from his conviction under an indictment charging him with participation in a conspiracy to obstruct justice [1] in violation of 18 U.S.C. § 371.[2] He contends that the evidence against him was insufficient to establish the offense alleged in the indictment and that an erroneous statement in the judge's instructions to the jury deprived him of a fair trial. The following facts, taken from the evidence viewed in the light most favorable to the government, are necessary to understand appellant's first contention.

## I.

In February, 1970, one Richard Baker testified before a grand jury in New Orleans that he had heard Edward Grady Partin threaten Wade McClanahan in an

---

* Of the Third Circuit, sitting by designation.

1. 18 U.S.C. § 1503, which provides that:

Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any witness, in any court of the United States or before any United States magistrate or other committing magistrate, or any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States magistrate or other committing magistrate, in the discharge of his duty, or injures any party or witness in his person or property on account of his attending or having attended such court or examination before such officer, commissioner, or other committing magistrate, or on account of his testifying or having testified to any matter pending therein, or injures any such grand or petit juror in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror, or injures any such officer, magistrate, or other committing magistrate in his person or property on account of the performance of his official duties, or corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

2. 18 U.S.C. § 371 provides that:

If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both. If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor.

attempt to dissuade McClanahan from testifying at Partin's federal trial for criminal antitrust and Hobbs Act violations. The government sought and received an obstruction of justice indictment against Partin based on this threat. The prosecution intended to call Richard Baker as a witness at the trial of the case but because of some oversight lost track of Baker after he was released from a prison in Texas where he was serving time on an unrelated charge. Having located Baker on September 27, 1972, while he was working as a crewman on a river tugboat, an FBI agent notified Baker that he was expected to testify for the government at Partin's obstruction of justice trial on October 10, 1972, in Houston. Baker responded that he would not testify. Upon receiving this information the somewhat surprised prosecutor obtained two subpoenas for Baker. One commanded his attendance at the October 10 trial of Partin and the other requested his presence on October 5 before a grand jury investigating whether another obstruction of justice had taken place because of Baker's apparent hesitance to repeat at trial his prior grand jury testimony against Partin. These subpoenas were served on Baker on September 30, 1972.

That same day Baker and a shipmate, Sam Howard, left ship at Pittsburgh, Pennsylvania, and together decided to call Partin in Baton Rouge, Louisiana, to let him know that Baker would not testify. Impersonating Baker, Howard eventually got a call through on October 2 and informed Partin of his unwillingness to testify and of his need for money. He also stated that he had never heard Partin threaten McClanahan. After a series of telephone calls it was agreed that Jerry Millican, an attorney, would come to Pittsburgh the next day, accompanied by Don Marionneaux, a friend of Partin's, in order to take Baker's statement. Howard was told that if he [Baker] would give a statement favorable to Partin, he would be given five hundred dollars for the statement and a good job after Partin's trial.

On October 3 Marionneaux and Millican flew to Pittsburgh and met Baker. They told him that arrangements had been made for Baker to give his statement at 6:00 p. m. before a former United States Attorney, Gustave Diamond. Millican then left and Marionneaux gave Baker fifty dollars and advised him that he would get the rest after giving his statement. At the appointed time Baker made the promised statement and when alone with Marionneaux was given an additional $450. Millican, Marionneaux, and Baker later that night flew back to Baton Rouge, arriving in the early morning hours of October 4. Meanwhile, Sam Howard became concerned about Baker's safety—Baker having expressed some fear of Partin—and informed Mr. Gallinghouse, the United States Attorney in New Orleans, of the foregoing transactions. This information led Gallinghouse to cause a material witness warrant to issue for Baker's arrest pending his testimony at Partin's trial in Houston on October 10.

Once in Baton Rouge on October 4, Don Marionneaux, Marionneaux's brother Hugh, Richard Baker, and Baker's brother James, engaged in a complex bout of drinking and driving that culminated with Richard Baker and Don Marionneaux spending the night in a motel in Lake Charles, Louisiana. Sometime during this period it was agreed that Baker would not appear before the grand jury the next day. On October 5, appellant Brasseaux finally entered the picture when he and Hugh and Don Marionneaux made arrangements for Baker to stay at Brasseaux's house near Duson-Scott, Louisiana. Brasseaux's first contacts with Baker took place, however, *after* the time had already passed for Baker's grand jury appearance that morning.

Baker remained at Brasseaux's house, except for one brief period, until the morning of October 9, but later that day appellant took Baker to a camp in Grand Chevier, Louisiana, where Baker remained until approximately October 29 or October 30, 1972. Meanwhile, because

of the absence of government witnesses, including Baker, the Partin obstruction of justice trial originally set for October 10 was continued until October 31. Appellant went to the camp "a couple of times" while Baker was there, taking him to get groceries on several occasions, and maintained telephone contact with the camp. At the end of October, Baker was moved first to Galveston and then to Houston, Texas. Brasseaux played no part in these moves. On November 2, 1972, Baker testified at the Partin trial and denied having heard Partin threaten McClanahan or having received $450 from Don Marionneaux. This testimony about his financial transactions with Marionneaux formed the basis of the government's charge that Baker gave false material declarations at the trial.

Appellant and the government disagree on a number of points concerning what the evidence shows. These disputes were for the jury to resolve. Appellant nonetheless argues that he was entitled to acquittal as a matter of law because the undisputed evidence shows (1) that he joined the conspiracy, if any, after its first alleged object was achieved and (2) that he had no knowledge of, nor did he participate in, the second alleged object. Brasseaux's argument runs like this: The indictment in this case actually charges two conspiracies in the guise of charging a single conspiracy with two objectives. One conspiracy was aimed at preventing Bak-

er's appearance before the grand jury on the morning of October 5. But Brasseaux did not meet Baker until the afternoon of that day. The second conspiracy sought to aid Baker in giving false material declarations at the Partin trial. Yet, appellant was no longer involved when Baker decided to go to Texas and testify, and he knew nothing of the substance of Baker's testimony. Thus, Brasseaux could not be convicted under the present indictment when the proof showed him involved only in a "lesser on-going conspiracy . . . to hide Baker from the authorities until after the Partin trial was completed." (Appellant's brief at 22).

■ Appellant's argument is grounded in a misapprehension of conspiracy law. The indictment did not charge Brasseaux with personal participation in the two alleged incidents of obstruction of justice. It charged him with willfully and knowingly joining with other conspirators whose purpose comprised those acts. Brasseaux apparently does not deny participating in a conspiracy, and the evidence viewed in the light most favorable to the government clearly was sufficient to establish that he acted with full knowledge of its general purpose—namely, to obstruct justice.[3] We find no warrant in the evidence for appellant's suggestion that he joined no more than a "lesser" conspiracy that somehow slips through the interstices of the government's indictment net.[4] Brasseaux himself clearly rendered

---

**3.** The government is not required to prove that a conspirator had full knowledge of all the details of the conspiracy; knowledge of the essential nature of the plan is sufficient. Blumenthal v. United States, 1947, 332 U.S. 539, 557, 68 S.Ct. 248, 256, 92 L.Ed. 154, 168; United States v. Cardi, 7th Cir. 1973, 478 F.2d 1362, 1369; cf. United States v. Musgrave, 5th Cir. 1973, 483 F.2d 327, 336.

**4.** Appellant states his contention in terms slightly different from those in which we choose to discuss it. He argues that "he was convicted on a charge the grand jury never made against him" because the indictment did not mention the "lesser" conspiracy in which appellant apparently would concede involve-

ment. Stirone v. United States, 1960, 361 U.S. 212, 218, 80 S.Ct. 270, 274, 4 L.Ed.2d 252, 257; Cole v. Arkansas, 1948, 333 U.S. 196, 68 S.Ct. 514, 92 L.Ed. 644; cf. United States v. Goodson, 5 Cir. 1974, 502 F.2d 1303, 1306.

We perceive no such variance problem here. The government offered no evidence not fairly derivable from the allegations of the indictment. Appellant's contention in reality attacks only the government's view that the transactions involving Richard Baker's testimony constituted one on-going conspiracy. Hence, his point parallels in some respects the more familiar argument in conspiracy cases that the indictment alleges one conspiracy while the government's proof estab-

Baker sustenance and transportation during the period from October 5 to October 9. There is some evidence that he rendered sustenance and transportation thereafter. The evidence permits the inference that he did so knowing that Baker was being sought as a witness by federal authorities. Taken together with the actions of the others mentioned in the indictment, these facts sufficiently establish Brasseaux's participation in "one overall agreement among the various parties to perform different functions in order to carry out the objectives of the conspiracy." United States v. Perez, 5th Cir. 1973, 489 F.2d 51, 62. *See also* United States v. Efronson, 5 Cir. 1974, 505 F.2d 104; United States v. Felts, 5 Cir. 1974, 497 F.2d 80, 81–82.

■■ Moreover, once having entered into a common scheme with the other conspirators, appellant is bound by all acts committed by them in furtherance thereof, including those acts committed without his knowledge before he joined the conspiracy. United States v. Wilson, 5th Cir. 1974, 500 F.2d 715, 727; United States v. McGann, 5th Cir. 1970, 431 F.2d 1104, 1106. Similarly, a conspirator may not willfully and knowingly participate in a criminal scheme and then disclaim responsibility when his coconspirators later take actions that are the necessary or natural consequence of the unlawful agreement. Nor may the same end be achieved by simply alleging that each illegal objective constitutes a separate conspiracy. Appellant's first point is without merit.

## II.

■■ Appellant also alleges that the district judge committed reversible error when he instructed the jury that

> [o]nce the existence of the agreement or common scheme or conspiracy is shown, however, *"slight* evidence" is all that is required to connect a particular defendant with the conspiracy. (emphasis in original).

The parties agree that this language appears frequently in appellate opinions in this circuit.[5] Appellant correctly notes, however, that what it purports to describe is the standard to be used by this court in judging whether the evidence against a particular defendant supported submission of his case to the jury. We agree with respected authority that the challenged language should not be used in the charge. 1 Devitt & Blackmar, Federal Jury Practice and Instructions § 29.05, at 280 (2d ed. 1970, 1974 Supp.). Nevertheless, although the instruction was erroneous, because appellant did not object at trial, we must go further and inquire whether the use of the "slight evidence" language constitutes plain error. Fed.R.Crim.P. 30, 52(b).

We could find no cases in which this precise question was raised. But our court has recently restated the consider-

lishes several. Kotteakos v. United States, 1945, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557. Appellant's complaint, however, is not like the one made in *Kotteakos, i. e.* that he was prejudiced in the manner of guilt by association by being tried together with many alleged coconspirators under an indictment charging one large conspiracy when the evidence revealed smaller clusters of conspirators involved in several separate conspiracies. *See* United States v. Perez, *supra,* 489 F.2d at 57; United States v. Morado, 5 Cir. 1972, 454 F.2d 167, 170. Instead, he argues *Stirone*-type prejudice arising from evidence at trial ostensibly establishing his participation only in a "lesser" conspiracy not charged in the indictment. In either case, even before reaching the question of possible prejudice we must determine whether the evidence shows one conspiracy or multiple conspiracies. As later noted in the text, we believe that the government properly alleged and proved one conspiracy.

5. *See, e. g.,* United States v. Prieto, 5 Cir. 1974, 505 F.2d 8, 11; United States v. Smith, 5 Cir. 1974, 504 F.2d 560, 562 n. 2; United States v. Maslanka, 5 Cir. 1974, 501 F.2d 208, 216; United States v. Miller, 5 Cir. 1974, 500 F.2d 751, 763; United States v. Wilson, *supra,* 500 F.2d at 727.

ations when reviewing a charge for plain error:

> The essential question before us, of course, is whether this contested part of the charge is so erroneous that when considered in the totality of the charge as a whole and the evidence presented against each appellant, the error is so great as to result in the likelihood of a grave miscarriage of justice.

United States v. Smith, 5th Cir. 1974, 502 F.2d 1250, 1256. We perceive two possible dangers inherent in the challenged instruction. First, the jury might be led to conclude that a defendant's participation in the alleged conspiracy need not be proved beyond a reasonable doubt. Second, they might simply become confused regarding the proper standard for linking a defendant to a conspiracy. Viewing the entire circumstances of this case we are not convinced that either possibility requires reversal here. Immediately following the "slight evidence" language the court charged that:

> Before the jury may find that a defendant, or any other person, has become a member of a conspiracy, *the evidence in the case must show beyond a reasonable doubt* that the conspiracy was knowingly formed, and that *the defendant or other person who is claimed to have been a member, willfully participated in the unlawful plan, with the intent to advance or further some object or purpose of the conspiracy.* (emphasis added).

At several other places in the charge the judge reiterated that each element of the offense must be proved beyond a reasonable doubt. Examining the challenged language in the context of the entire charge, we are not convinced that appellant's case was prejudiced.

Appellant's two contentions being without merit, the judgment is affirmed.

Affirmed.