UNITED STATES of America, Plaintiff-Appellee,

v.

Billy W. GRAY, Lee Andrew Fennell, Roger Lee Wright, Ronald Cecil Barker and Vance C. Dyar, Defendants-Appellants.

No. 79–5133.

United States Court of Appeals, Fifth Circuit.

Sept. 26, 1980.

Rehearings Denied Oct. 22, 23, 1980.

---

D. Wayne Childress, Tuscaloosa, Ala. (Court-appointed), for Gray.

Robert F. Clark, Mobile, Ala., for Dyar.

J. B. Sessions, III, Mobile, Ala., for Fennell.

Thomas E. Harrison, Mobile, Ala. (Court-appointed), for Wright.

John R. Martin, Mary J. Wilkes, Atlanta, Ga., for Barker.

Wm. A. Kimbrough, Jr., U. S. Atty., William R. Favre, Jr., Asst. U. S. Atty., Mobile, Ala., for plaintiff-appellee.

Before WISDOM, KRAVITCH and POLITZ, Circuit Judges:

POLITZ, Circuit Judge:

Billy Gray, Lee Fennell, Roger Wright, Ronald Barker and Vance Dyar were convicted of: (1) distribution and possession with intent to distribute marijuana, 21 U.S.C. § 841(a)(1); (2) conspiracy to distribute and to possess with intent to distribute marijuana, 21 U.S.C. § 846; (3) importation of marijuana, 21 U.S.C. § 952(a); and (4) conspiracy to import marijuana, 21 U.S.C. § 963. They received concurrent sentences on all counts. They appeal, contending: (1) each defendant may adopt the arguments of the others on appeal, albeit not urged in their briefs; (2) venue was improper; (3) a DEA affidavit supporting a search warrant inadequately established probable cause; (4) there was government misconduct because of entanglement in the criminal scheme and excessive payments to informants; (5) the trial judge improperly limited cross-examination; (6) the jury was erroneously instructed that "slight evidence" was all that was needed for a conviction; (7) the evidence was insufficient to convict Fennell; and (8) the prosecution prejudiced Ronald Barker in its closing arguments. We reverse in part and affirm in part.

Laden with 12,000 pounds of marijuana, the defendants flew into Stennis Field in Mississippi early on the morning of July 24, 1978. They loaded the marijuana onto waiting trucks and drove to somewhere near Mobile, Alabama, where the trucks were searched and they were arrested. They were tried in the U.S. District Court for the Southern District of Alabama.

Two DEA informants, Ed Conn and Joe Haas, provided crucial testimony at trial. Conn had a history of drug smuggling, having been indicted for a 1978 scheme to smuggle 8,000 pounds of marijuana into Thomasville, Georgia. The DEA promised him help with his Thomasville problems in exchange for his cooperation. Conn was paid $25,000 for his work in this case. Haas had worked with the DEA for a period of about 10 years and was paid about $37,000 for his efforts in this case.

**I. Adoption of Codefendants' Arguments**

On appeal, only Wright followed Fed.R.App.P. 28(i) and adopted his codefendants' arguments by reference in his brief. The other defendants waited until oral argument to adopt their codefendants' contentions. Ordinarily we would limit each defendant's appeal to the issues raised in his brief. However, we have discretion to suspend the Federal Rules of Appellate Procedure "for good cause shown," Fed.R. App.P. 2. Believing it anomalous to reverse some convictions and not others when all defendants suffer from the same error, we consider the arguments to be adopted, except as noted. *United States v. Anderson*, 584 F.2d 849 (6th Cir. 1978). *See also Marcaida v. Rascoe*, 569 F.2d 828 (5th Cir. 1978); 9 *Moore's Federal Practice* ¶228.02[8] (2d ed. 1980). This adoption does not prejudice the government which had the opportunity to fully brief all issues in response to the various contentions of the defendants.

**II. Venue**

The defendants claim an abridgement of their Sixth Amendment right to a trial in "the State and district wherein the crime shall have been committed." The marijuana was imported into Mississippi and then transported to Alabama, where the defendants were arrested for violating 21 U.S.C. § 952(a). The defendants contend that the Sixth Amendment requires that the trial be held in the state of importation,

Mississippi, and not the state of arrest, Alabama. Defendants err.

We are in accord with the decision of our brethren of the Tenth Circuit. *United States v. Jackson*, 482 F.2d 1167 (10th Cir. 1973), *cert. denied*, 414 U.S. 1159, 94 S.Ct. 918, 39 L.Ed.2d 111 (1974), wherein it was held that importation of a controlled substance in violation of 21 U.S.C. § 952(a) is a "continuous crime" that is not complete until the controlled substance reaches its final destination point, and that venue is proper in any district along the way. We adopted the reasoning of *Jackson* in our decision in *United States v. Godwin*, 546 F.2d 145 (5th Cir. 1977).

### III. Fourth Amendment

■ The defendants contend that the evidence resulting from the search of the tractor-trailer should have been suppressed because the DEA's affidavit for a search warrant, grounded on information from an informant, did not articulate the basis for the claim of reliability of the informant. This contention is without the semblance of merit.

The affidavit stated that the informant had provided reliable information in the past resulting in convictions for drug violations, and set forth information given by the informant telling when the plane carrying the marijuana would arrive at Stennis Field and describing the truck onto which the marijuana would be loaded. This alone would have been enough to sustain the affidavit under Fed.R.Crim.P. 41(a), the past reliability of the informant plus the detailed information given indicating that the informant knew whereof he spoke. *United States v. Jenkins*, 525 F.2d 819 (6th Cir. 1975). There was additional confirmation of the informant's reliability. The affidavit stated that DEA agents were present at Stennis Field, they saw a plane land there at about the time given by the informant, and saw people unload several bales from the plane into a truck that matched the description given by the informant. The agents' check of the bumper of the truck revealed marijuana seeds. When the infor-

mant's data is supported and corroborated by the observation of the affiant, probable cause is established. *Marderosian v. United States*, 337 F.2d 759 (1st Cir. 1964), *cert. denied*, 380 U.S. 971, 85 S.Ct. 1328, 14 L.Ed.2d 268 (1965).

### IV. Government Misconduct

■ The defendants contend that the government's conduct was so outrageous as to require reversal of their convictions for failure of due process. *United States v. Graves*, 556 F.2d 1319 (5th Cir. 1977), *cert. denied*, 435 U.S. 923, 98 S.Ct. 1485, 55 L.Ed.2d 516 (1978).

Conn and Haas first met Gray at an airplane auction in Missouri. According to the defendants, Haas raised the subject of smuggling to Gray, thereby initiating the drug scheme. Later, Conn offered to provide a plane, but withdrew the offer because the plane was under observation by several government agencies. The defendants then bought their own plane, with Conn providing repair services and the airstrip and Haas providing the crew. Conn and Haas never had any contact with Dyar, Barker, Wright and Fennell.

The defendants organized and ran the operation: they provided the airplane, the money and the sources of supply in Colombia, and they made the arrangements for transportation of the marijuana from Stennis Field. The informants may have suggested the scheme and aided in arranging the air transportation. This does not constitute government misconduct. The providing of essential aid is not misconduct per se. *Hampton v. United States*, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976) (government supplied narcotics); *United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973) (government provides essential ingredient for manufacture of illegal drug). Here the informants merely eased the way for the conspirators. *Cf. United States v. Thomas*, 567 F.2d 638 (5th Cir. 1978), *cert. denied*, 439 U.S. 822, 99 S.Ct. 90, 58 L.Ed.2d 114 (government offer, which was never acted on, to supply airplane, crew, and name of foreign supplier,

was not misconduct). *But cf. United States v. Twigg*, 588 F.2d 373 (3rd Cir. 1978) (government misconduct found where agent suggested establishment of drug laboratory, provided place, equipment, supplies and know-how, and then ran entire enterprise operation merely assisted by defendants).

■ The defendants also contend that there was misconduct because the informants were paid excessive amounts of money. Haas was paid about $37,000 for his services and Conn received $25,000. Although high informant fees are and must be suspect, an informant's testimony will not be rejected unless there is evidence that he was promised payment contingent upon conviction of a particular person. *United States v. Garcia*, 528 F.2d 580 (5th Cir. 1976), *cert. denied*, 426 U.S. 952, 96 S.Ct. 3177, 50 L.Ed.2d 1190, 429 U.S. 898, 97 S.Ct. 262, 50 L.Ed.2d 182. There is neither allegation nor proof that a contingent fee was promised to either Conn or Haas.

Nor is there misconduct in the offer to help Conn with his Thomasville problems because that promise of help did not depend on whether Conn's testimony played a part in the conviction of a specific person.[1]

There is no merit in defendants' claim of government misconduct warranting dismissal of the indictments.

V. Limitation on Cross-Examination

Conn's testimony lies at the heart of the government's case. The defendants sought to discredit Conn by informing the jury that he had a drug charge pending against him in another airplane smuggling operation in Thomasville, Georgia, and that the DEA had offered him help with that charge in return for his help in this case. Counsel asked several questions about whether Conn had committed a crime in the Thomasville operation. The district judge sustained objections to these questions because Conn had made known his intent to invoke the Fifth Amendment.

■ The defendants contend that this limitation on cross-examination infringed their Sixth Amendment right to confrontation of witnesses. We disagree. Conn testified that he had been charged with a drug offense in Thomasville and admitted that the DEA had offered him immunity in exchange for his help in this case. The predicate for impeachment was laid. There was no violation of defendants' right to confrontation. *United States v. Onori*, 535 F.2d 938 (5th Cir. 1976). The district court did not abuse its discretion in holding that whether Conn actually committed a crime in Thomasville was beyond the pale of appropriate cross-examination. We are persuaded the jury adequately understood the matter. There is no Sixth Amendment right to compel a witness to go through the exercise of taking the stand when one knows in advance that the witness will assert his Fifth Amendment right against self-incrimination. There is no Sixth Amendment right to force another to "take the Fifth." *United States v. Bolts*, 558 F.2d 316 (5th Cir. 1977), *cert. denied*, 439 U.S. 898, 99 S.Ct. 262, 58 L.Ed.2d 246 (1978).

The trial judge allowed the defense to ask Conn whether he had been paid by the DEA for his part in other operations. However, the court refused to allow the defense to ask specific questions about operations Conn had been subsequently involved in, and whether he was involved in a particular operation in South America. The judge reasoned that such cross-examination might jeopardize ongoing investigations by the government.

■ The defendants contend that this violated their Sixth Amendment right to confrontation, and that they were entitled to cross-examine a government informer as to the informant's total compensation from other government cases, citing *United States v. Leja*, 568 F.2d 493 (6th Cir. 1977).

1. The defendants allege one other basis for misconduct. They argue that Conn, with DEA approval, bribed Colombian officials on this operation. The record reflects a bribe but it was done at a subsequent time as part of an effort by Conn to get a pilot friend out of a Colombian jail. The DEA was aware of the purpose of this subsequent trip by Conn, but it had nothing to do with it.

We disagree. A trial judge may refuse to allow disclosure of a witness' address or place of employment when the value of the evidence is outweighed by the danger to the witness' safety. Fed.R.Evid. 611(a); *United States v. Rice*, 550 F.2d 1364 (5th Cir. 1977), *cert. denied* 434 U.S. 954, 98 S.Ct. 479, 54 L.Ed.2d 312; 3 Weinstein and Berger, *Weinstein's Evidence* ¶607[03], pp. 607–31. The government is entitled to the same protection when the probative value of the evidence is outweighed by the risks inherent in exposing incomplete investigations. The defense brought out what Conn received for his assistance, and that he was continuing to work for the DEA. This fully exposed Conn's potential bias to the jury. The district judge was well within the ambit of his discretion in refusing to allow more detail that might jeopardize ongoing investigations.

## VI. Jury Instructions

 The defendants contend that the trial judge erred in giving an instruction on conspiracy. Ordinarily this would not be reviewable under the concurrent sentence doctrine, *United States v. Rubin*, 591 F.2d 278 (5th Cir. 1979), *cert. denied*, 100 S.Ct. 133, because the defendants were also convicted of distribution and possession with intent to distribute marijuana, 21 U.S.C. § 841(a)(1), and importation of marijuana, 21 U.S.C. § 963, and were given concurrent sentences on all counts. The defendants, however, contend that the erroneous instructions tainted the convictions on the substantive counts as well, which mandates our review of the instructions. *United States v. Burrell*, 505 F.2d 904 (5th Cir. 1974).

The trial court gave the jury a proper instruction on conspiracy. Unfortunately, it did not leave well enough alone. At the request of Gray and Dyar, it added:

> The Government need only introduce slight evidence of a particular defendant's participation, once the conspiracy is established, but must establish beyond a reasonable doubt that each member had a knowing, special intent to join the conspiracy. Mere association with a conspirator, of course, is not enough.

This instruction is reversible error. *United States v. Partin*, 552 F.2d 621 (5th Cir. 1977), *cert. denied*, 434 U.S. 903, 98 S.Ct. 298, 54 L.Ed.2d 189; *United States v. Hall*, 525 F.2d 1254 (5th Cir. 1976); *United States v. Brasseaux*, 509 F.2d 157 (5th Cir. 1975).

Barker and Dyar objected to the instruction, and the trial judge sought to correct his error. He called the jury back in and said:

> Ladies and gentlemen, I want to make some clarifying comments about one of the written charges.
>
> The Government need only introduce slight evidence of a particular defendant's participation once the conspiracy is established, but must establish, beyond a reasonable doubt, that each member had a knowing special intent to join the conspiracy. Mere association with a conspirator is not enough.
>
> My particular remarks that I want to make to you about the slight evidence is that means that just a little evidence as to participation, but even as to that slight or little evidence, you must be convinced, beyond a reasonable doubt, that he participated.

Unfortunately this attempt only worsened the matter. The "slight evidence" reference can only be seen as suffocating the "reasonable doubt" reference.

The defendants further contend that this attempt to clarify the "slight evidence" instruction on the conspiracy tainted the instructions given on the substantive counts. We disagree. In his ill-fated effort to cure the "slight evidence" error in the conspiracy instructions, the trial judge specifically said that he wanted to clarify "*one of the written charges.*" His explanation clearly went to the amount of evidence necessary to establish participation in a conspiracy. No reasonable juror could have thought that the judge was instructing him to convict on "slight evidence" of importation or possession and distribution. Upon our review of the entire charge, including the return-to-courtroom epilog quoted above, we conclude

that, considered in its totality, the charge fairly and accurately informed the jury and the slight evidence aberration did not distort or corrupt the charges as given on the substantive counts.

■ The conspiracy convictions of Fennell, Wright and Barker must be reversed. Gray and Dyar requested the "slight evidence" charge. Under the doctrine of invited error, a defendant who asks for an instruction will not be heard to complain about the instruction on appeal. *United States v. Easterly*, 444 F.2d 1236 (5th Cir. 1971).[2]

Gray did not specifically join his codefendants' objection at trial and did not adopt their position in his brief. If he were the sole defendant the invited error doctrine would foreclose further consideration of his complaint about the slight evidence charge. The question is whether his codefendants' actions preserve his position. We conclude otherwise. First, a defendant who asks for a jury instruction cannot silently join his codefendants' vocal objection to his request. Were silent joinder allowed, when codefendants agree to adopt each other's objections there would be an incentive for each defendant to ask for an erroneous instruction in the hope of trapping the judge. Then by operation of the silent joinder mechanism, each defendant would have the advantage of the error he invited. To avoid being foreclosed by the invited error doctrine, we conclude that the party who invites the error must inform the court that he no longer seeks the challenged instruction. Second, we hold that Gray cannot silently join his codefendants' appeal on this issue. Failure to timely object to an instruction waives the right to appeal. Fed. R.Crim.P. 30. Similarly, failure to timely

withdraw a request for an erroneous instruction precludes a defendant from joining his codefendants' appeal as to that instruction.

Dyar presents a different issue. He asked for the "slight evidence" instruction, but then specifically joined Barker's objection to the instruction. This was enough to withdraw and thereby avoid the effects of the invited error doctrine. Dyar did not waive his right to appeal and he may appropriately adopt his codefendants' attack on the "slight evidence" instruction. To hold otherwise would result in the anomaly referred to in Part I, *infra*.

## VII. Sufficiency of the Evidence

Fennell contends that there is insufficient evidence to sustain the conviction of importation of marijuana, 21 U.S.C. § 952(a)[3] and conspiracy to import marijuana, 21 U.S.C. § 963. He concedes that there was enough evidence for the conviction of distribution and possession with intent to distribute marijuana, 21 U.S.C. § 841(a)(1). Fennell was given concurrent sentences on all counts. The question is whether the concurrent sentence doctrine negates the necessity for review of his importation conviction.

The concurrent sentence doctrine is not a sentencing doctrine, but rather, it is a genus of appellate review rules. It clothes appellate courts with the discretion to decline review of convictions in certain instances when a defendant is given concurrent sentences on two or more counts. The rationale for the doctrine is judicial efficiency, the hope being that by the application of the rule, courts can avoid making time-consuming decisions which result in no mean-

2. The invited error doctrine bars reversal even if the instruction constituted plain error, *United States v. Davis*, 443 F.2d 560 (5th Cir. 1971), *cert. denied*, 404 U.S. 945, 90 S.Ct. 298, 30 L.Ed.2d 260, although *Davis'* continued validity is open to some doubt. *See United States v. Trevino*, 565 F.2d 1317 (5th Cir. 1978), *cert. denied*, 435 U.S. 971, 98 S.Ct. 1613, 56 L.Ed.2d 63 (dictum). The "slight evidence" instruction was held not to be plain error in *United States v. Brasseaux*, 509 F.2d 157 (5th Cir. 1975).

3. The sufficiency of the evidence for the conviction for conspiracy to import marijuana is at issue here, even though it was reversed because of the "slight evidence" charge. Fennell faces the possibility of a new trial on the conspiracy to import charge unless the evidence is found insufficient. This issue applies only to Fennell.

ingful "bottom line" difference to the defendant.

The doctrine has been applied in this circuit and elsewhere. *United States v. Warren*, 612 F.2d 887 (5th Cir. 1980);[4] Comment, "The Concurrent Sentence Doctrine after *Benton v. Maryland*," 7 U.C.L.A.–Atlas L.Rev. 282; Note, "The Federal Concurrent Sentence Doctrine," 70 Colum.L.Rev. 1099 (1970). It has been the subject of intense discussions. *See*, dissent by Roney and Hill, JJ., in *Warren, id.* at 891.

Fennell argues that the concurrent sentence doctrine should not be applied to him because the court may have considered the importation and conspiracy to import charges in setting the sentences for possession with intent to distribute and conspiracy to possess with intent to distribute. We are not persuaded.

If the possibility that a sentencing judge might consider a challenged count in sentencing for an unchallenged one were enough to bar application of the concurrent sentence doctrine, the doctrine would cease to exist. As cited above and in footnote 4, we have recognized the concurrent sentence doctrine in this circuit. Fennell's proposed rule would require that we ignore the decisions in these earlier cases. This we may not do. Rather, we must examine the circumstances of the questioned sentence and apply the doctrine as we understand it.

■ First, we must determine whether the district court expressly considered the challenged counts in sentencing on the unchallenged count. In a collateral attack on a sentence, under 28 U.S.C. § 2255, the prisoner has the burden of showing that the court considered an invalid prior conviction. *Tallent v. United States*, 604 F.2d 370 (5th Cir. 1979). When the question is as presented here—whether the concurrent sentence doctrine precludes appellate review—the defendant's burden is limited to presenting information tending to show consideration of the challenged counts. Fennell makes no showing that the district court considered the challenged counts in its sentencing.

■ Second, we examine the length of the sentence compared to the statutory limits. Out of a maximum sentence of five years on the possession with intent to distribute count,[5] 21 U.S.C. § 841(b)(1)(B), Fennell was given a three-year sentence.[6]

A sentence in the middle of the statutory range strongly suggests that the other convictions were not considered. *Cf. United States v. Febre*, 425 F.2d 107 (2d Cir. 1970), *cert. denied*, 400 U.S. 849, 91 S.Ct. 40, 27 L.Ed.2d 87 (applying concurrent sentence doctrine where trial court imposed sentences only one year above the statutory minimum, and where there was other evidence that the number of the counts did not influence the length of the sentences).

Third, we compare the seriousness of the challenged and the unchallenged counts. If the challenged counts are more serious than the unchallenged counts, there is an increased likelihood that the sentence on the unchallenged count was influenced by the sentences on the challenged counts. In *United States v. Cardi*, 519 F.2d 309 (7th Cir. 1975), a defendant was sentenced to concurrent sentences on three counts, and a consecutive sentence on a fourth count. On appeal, the concurrent sentence doctrine was not applied, and two of the concurrent sentences were reversed. The defendant then petitioned the district court for a reduction in sentence under Fed.R.Crim.P. 35, contending that the invalid convictions might have influenced the sentences on the valid convictions. The district court denied the motion, saying that it had not considered the invalid convictions in the original sentence, and the Seventh Circuit af-

---

4. *See, e. g., United States v. Dubea*, 612 F.2d 950 (5th Cir. 1980); *United States v. Alfrey*, 612 F.2d 180 (5th Cir. 1980); *United States v. Ortiz*, 610 F.2d 280 (5th Cir. 1980); *United States v. Vasquez-Vasquez*, 609 F.2d 234 (5th Cir. 1980).

5. Fennell had never been convicted of a federal drug offense before, so he was not subject to a ten year sentence. 21 U.S.C. § 841(b)(1)(B).

6. Fennell also received two years' probation, as required by the statute.

firmed, partly because the invalid convictions were no more serious than the valid convictions. The court distinguished *McGee v. United States*, 462 F.2d 243 (2d Cir. 1972), in which the invalid count involved a far more important matter than the other counts. 519 F.2d at 312–13. In this case, Fennell was convicted of four drug counts arising out of the same transaction, all of which carried the same potential penalty. 21 U.S.C. §§ 841(b)(1)(B), 846. None was more serious in impact than the others.

The exact resting point of the burden of persuasion in the corridors of the concurrent sentence arena is not yet set in concrete. *United States v. Warren*, 612 F.2d at 896 (Roney and Hill, JJ., dissenting). Nor need we pour that concrete today, for Fennell has not come forward with information tending to show that there is reason to believe the challenged counts influenced the sentence imposed on the unchallenged counts. He says so, but the mere saying does not make it so. Invoking the concurrent sentence doctrine, we decline to review Fennell's importation and conspiracy to import convictions for sufficiency of the evidence.

VIII. Closing Arguments

■ Richard Brown was an alleged member of the conspiracy who avoided arrest. One witness momentarily referred to Richard Brown as Richard Barker, but it is not clear whether this was a slip of the tongue, or whether Brown used Richard Barker as an alias. In his closing arguments, the prosecutor referred to Brown as Richard Barker several times, and made one reference to "the Barkers."

Ronald Barker objected, contending that there was insufficient proof that Richard Brown used the name Richard Barker, and that the prosecution had prejudiced him (Ronald Barker) by implying that he was Richard Brown/Barker's brother. The prosecution's conduct was less than laudable, but the trial judge dispelled any prejudice by immediately telling the jury that there was little evidence to show that Richard Brown had used the name Richard Barker, that he had instructed the U.S. Attorney to stop referring to Richard Brown as Richard Barker, and that there was no kinship between Richard Brown and Ronald Barker. There is no reversible error in this complaint.

The conspiracy convictions of Fennell, Wright, Barker and Dyar are REVERSED.

All other convictions are AFFIRMED.