Filed 4/3/25  P. v. Hurtado CA1/3
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br>v.<br><br>NATHAN ANTHONY HURTADO,<br><br>    Defendant and Appellant. | A167684<br><br>(Contra Costa County<br>Super. Ct. No. 01-22-02139) |

A jury found defendant Nathan Anthony Hurtado guilty of a number of offenses, including second degree burglary and vandalism.  On appeal, he contends the trial court erred by instructing the jury with CALCRIM No. 376.  He also contends insufficient evidence supports his conviction for felony vandalism.  We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

The People charged defendant by information with second degree burglary (Pen. Code, § 459[1]); vandalism causing damage over $400 (§ 594, subd. (a)); receipt of stolen property with a value exceeding $950 (§ 496, subd. (a)); possession of weapons on school grounds (§ 626.10, subd. (b)); trespass and refusing to leave private property (§ 602, subd. (o)); and possession of burglar's tools (§ 466).

---

[1]    All undesignated section references are to the Penal Code.

1

A jury found defendant guilty of all counts. The trial court sentenced him to a total of two years in prison. The following is a brief summary of the evidence presented at trial.

Officer Daniel Wiegand of the Contra Costa Community College District Police Department was dispatched to the faculty offices at Diablo Valley College (DVC) on November 5, 2022 at around 6:18 a.m. Wiegand saw broken glass on the floor and multiple smashed sliding glass office doors. One faculty office, number 154, was particularly disheveled, and a gouge mark appeared on a computer monitor. The door to another office, number 158, had been forced open and a number of items were either damaged or missing. After canvassing the area and not finding any suspects nearby, Wiegand returned to the DVC police station to write his report.

At 9:35 a.m. the same day, Officer Wiegand was dispatched to the social sciences division office, about 50 yards south of the first scene. Wiegand observed a window had been smashed with a metal tool, such as a pry bar or crowbar, to gain entry into the building, and glass on an interior door to the division dean's office had also been smashed to gain entry. He searched the building but did not find anyone inside. The social sciences dean and an administrative assistant identified various missing items.

At around 3:00 p.m. the same day, Officer Wiegand was again dispatched, this time to the DVC ceramics building which was inaccessible to the public and used only for storage and maintenance. Wiegand noticed fresh pry marks on the locked door leading into the building. In a loft accessible only by a wooden ladder, defendant was asleep on multiple bed rolls. Wiegand had cited and released defendant for illegal lodging at DVC five days before, with notice to not reenter for seven days or be subject to arrest. Within arm's reach of defendant was a locked, folded pocketknife.

2

Within several feet of where defendant was sleeping were numerous items that either belonged to DVC or its faculty members or were taken from the office buildings that were broken into. An eight-inch knife and a metal crowbar were found in a ventilation duct directly above defendant. Officer Wiegand determined the width of the crowbar was consistent with the width of the pry marks he saw on the damaged doors, and he believed the crowbar was likely used to pry them open, as well as to smash the windows and sliding glass doors. He arrested defendant.

A witness testified that on the afternoon of November 5, 2022, he found broken sculptures in the ceramics room and other items that appeared to have fallen off shelves. The broken sculptures included three that the witness had spent 60 hours each in making. The drapes in the ceramics room had been pulled shut, even though no one uses the room, and the witness knew of no one who would have closed the blinds. Another witness testified the total cost to replace the broken glass at the office locations was $5,114.88.

Defendant filed a timely notice of appeal.

## DISCUSSION

### A. CALCRIM No. 376

In instructing on the elements of second degree burglary, the trial court told the jury the People had to prove defendant entered a building or a room in a building with intent to commit theft. The court also instructed with CALCRIM No. 376, as follows: "If you conclude that a defendant knew he possessed property and you conclude that the property had in fact been recently stolen, *you may not convict the defendant of Second Degree Burglary based on those facts alone.* However, if you also find that supporting evidence tends to prove his guilt, then you may conclude that the evidence is sufficient to prove he committed Second Degree Burglary. [¶] *The supporting evidence*

*need only be slight and need not be enough by itself to prove guilt.* You may consider how, where, and when the defendant possessed the property, along with any other relevant circumstances tending to prove defendant's guilt of Second Degree Burglary. [¶] Remember that you may not convict a defendant of any crime unless you are convinced that each fact essential to the conclusion that the defendant is guilty of that crime has been proved beyond a reasonable doubt." (Italics added.)

Defendant now contends that instructing with CALCRIM No. 376 violated his rights to have each element of the offense proven beyond a reasonable doubt and to due process. Specifically, he claims "the instruction permitted a finding of the contested elements of the crime, including that [he] took the property or had the intent to permanently deprive, based only upon 'slight' corroboration."

Initially, we reject the People's contention that this argument has been forfeited. Though defendant did not object to the instruction at trial, there is no forfeiture where the alleged instructional error asserts a violation of substantial constitutional rights. (§ 1259; *People v. O'Dell* (2007) 153 Cal.App.4th 1569, 1574 (*O'Dell*).) We turn to address the merits of the claim.

"An appellate court reviews the wording of a jury instruction de novo and assesses whether the instruction accurately states the law." (*O'Dell*, *supra*, 153 Cal.App.4th at p. 1574.) " '[T]he correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of [] a particular instruction.' " (*People v. Delgado* (2017) 2 Cal.5th 544, 573–574.) "We look to the instructions as a whole and the entire record of the trial, including the arguments of counsel." (*People v. Lopez* (2011) 198 Cal.App.4th 698, 708 (*Lopez*).)

4

As defendant acknowledges, CALCRIM No. 376 and its materially similar predecessor CALJIC No. 2.15 have been repeatedly upheld against similar attacks. (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 188–189, and cases cited; *O'Dell, supra,* 153 Cal.App.4th at pp. 1574–1575, and cases cited; *People v. Solorzano* (2007) 153 Cal.App.4th 1026, 1035–1036 (*Solorzano*), and cases cited.)

In *O'Dell*, for instance, the court rejected the argument that "CALCRIM No. 376 should be given only in instances of unexplained possession of the stolen item," stating: " '[A]s CALJIC No. 2.15 acknowledges, an inference of guilt may rationally arise from the concurrence of conscious possession and many other circumstances. For example, where the evidence supports a finding that an arrestee had stolen property in his pocket a short time after a robbery and that the arrestee was seen approaching the victim a short time before the robbery, the inference of guilt is reasonable, if not compelling, regardless of whether or not the arrestee explained how he obtained the property. Moreover, this inference is reasonable even if the arrestee gives a plausible explanation for having the property. In our view, CALJIC No. 2.15 correctly prohibits the jury from drawing an inference of guilt solely from conscious possession of recently stolen property but properly permits the jury to draw such an inference where there is additional corroborating evidence. As long as the corroborating evidence together with the conscious possession could naturally and reasonably support an inference of guilt, and that inference is sufficient to sustain a verdict beyond a reasonable doubt, we discern nothing that lessens the prosecution's burden of proof or implicates a defendant's right to due process.' " (*O'Dell, supra,* 153 Cal.App.4th at p. 1576.)

In *Solorzano*, the Court of Appeal aptly noted that CALCRIM No. 376's requirement of slight supporting evidence *prohibits* the jury from finding a defendant guilty solely on the basis of possession of stolen property. As *Solorzano* explained, "the inference that possession of stolen property creates is permissive, not mandatory. *The case law is settled that requiring only slight corroborating evidence in support of a permissive inference, like the one that possession of stolen property creates, neither changes the prosecution's burden of proving every element of the offense nor otherwise violates the right to due process if, as here, the conclusion suggested is one that common sense and reason can justify 'in light of the proven facts before the jury*.' [Citations.] [¶] The permissive inference that CALCRIM No. 376 authorizes if the jury finds slight supporting evidence is linguistically synonymous with, and constitutionally indistinguishable from, the permissive inference that CALJIC No. 2.15 authorizes if the jury finds slight corroborating evidence. CALJIC No. 2.15 has withstood repeated constitutional attack." (*Solorzano*, *supra*, 153 Cal.App.4th at pp. 1035–1036, italics added.)

We decline to depart from the long line of cases upholding the challenged instruction, and we reject defendant's contentions. However, we take a moment here to address some of his specific points.

Defendant contends the error here is similar to that in *United States v. Gray* (5th Cir. 1980) 626 F.2d 494, which involved a conspiracy charge. This is unavailing. "Here, the issue was whether guilt on a burglary charge may be inferred from the possession of recently stolen property along with other supporting evidence. *Gray* is not analogous or persuasive." (*Lopez*, *supra*, 198 Cal.App.4th at pp. 711–712.) We agree with *Lopez*, and notably, the California Supreme Court has also distinguished federal conspiracy cases

concerning instructional error similar to the error in *Gray*. (*People v. Grimes* (2016) 1 Cal.5th 698, 731 (*Grimes*).)

Defendant claims CALCRIM No. 376 was not appropriate for this case because "[l]ittle about the circumstances of his arrest showed that [he] had stolen the property." But as the California Supreme Court has reasoned, " '[p]ossession of recently stolen property is so incriminating that to warrant conviction [for theft-related offenses] there need only be, in addition to possession, slight corroboration in the form of statements or conduct of the defendant tending to show . . . guilt.' " (*Grimes*, *supra*, 1 Cal.5th at p. 731.) Consistent with *Grimes*'s analysis, the instruction in this case told the jury, "If you conclude that a defendant knew he possessed property and you conclude that the property had in fact been recently stolen, you may *not* convict the defendant of Second Degree Burglary based on those facts alone. However, if you *also find* that supporting evidence tends to prove his guilt, then you may conclude that the evidence is sufficient to prove he committed Second Degree Burglary." (Italics added.) No error appears.

Though the instruction told the jury that defendant's knowing possession of recently stolen property was *not* enough to support a second degree burglary conviction, defendant claims the requirement for slight corroborating evidence may have been proven by evidence that in fact demonstrated little support for his conviction at all. For example, defendant argues, one potential item of corroborating evidence was Officer Wiegand's testimony that he had previously arrested, cited, and released defendant and that defendant was a "homeless transient" living on the college campus. In other words, defendant asserts, "the instruction permitted a conviction for second-degree burglary based upon his presence in the loft and the 'slight'

7

additional evidence of his being arrested, cited, and released earlier." This is also unpersuasive.

During closing argument, the prosecutor explained the elements of the burglary count in a manner consistent with CALCRIM No. 376, stating she needed to prove "beyond a reasonable doubt that the defendant entered a building and when he did, he intended to commit a theft." In arguing defendant's guilt of burglary, she pointed to the evidence that he possessed a crowbar that was used to force entry into various offices and buildings just hours before, and to the evidence that he committed theft. Notably, the prosecutor never suggested the jury could convict defendant of second degree burglary based on his presence in the loft and the slight corroborating evidence of his earlier arrest, citation, and release.

Considering the record as a whole, we conclude there is no reasonable likelihood that the jury construed the instructions as permitting it to infer guilt on the burglary charge just because defendant was cited and released from the campus a week prior. (*People v. Dieguez* (2001) 89 Cal.App.4th 266, 276.)

For similar reasons, we reject defendant's contention in his reply brief that the jury might have disregarded the burglary instruction altogether and rendered a conviction by relying on CALCRIM No. 376 along with the instructions on circumstantial evidence. This belated argument is difficult to follow; defendant appears to be arguing that the jury might have believed the only facts requiring proof were those set out in CALCRIM No. 376. But "[j]urors are presumed able to understand and correlate instructions and are further presumed to have followed the court's instructions." (*People v. Sanchez* (2001) 26 Cal.4th 834, 852.) There is nothing in the record suggesting the jury ignored the instruction on the elements of second degree

8

burglary.  Indeed, that position is unlikely given the prosecutor's closing argument, which recited the elements.

In sum, we reject defendant's claim of instructional error.

**B. Vandalism**

Section 594, subdivision (a) provides:  "Every person who maliciously commits any of the following acts with respect to any real or personal property not his or her own, in cases other than those specified by state law, is guilty of vandalism:  [¶] (1) Defaces with graffiti or other inscribed material.  [¶] (2) Damages.  [¶] (3) Destroys."  In this context, "maliciously" means "a wish to vex, annoy, or injure another person, or an intent to do a wrongful act."  (§ 7, subd. (b)(4).)  The crime is punishable as a felony where the amount of defacement, damage, or destruction is $400 or more.  (§ 594, subd. (b)(1).)

Defendant urges reversal of his felony vandalism conviction based on the claimed insufficiency of the evidence concerning his identity as the perpetrator.  More specifically, he argues the evidence of his trespass and sleeping close to a crowbar in a loft containing stolen property did not prove his identity as the vandal.  He also contends the evidence was insufficient to prove that the crowbar was the tool used to commit the vandalism, noting Officer Wiegand "only suggested" the crowbar "could have been the tool used in the crime" and at most said the crowbar " 'was *likely* used to smash out the windows.' "

"In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  [Citations.]  Reversal on this ground is unwarranted unless it appears

'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' " (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

Here, there was ample evidence supporting the jury's determination that defendant was the perpetrator. Officer Wiegand observed that multiple doors, glass doors, and windows in three different buildings on the DVC campus were broken on November 5, 2022, which cost over $5000 to repair. The damage to the various doors and windows was consistent with having been made by a tool such as a crowbar. The same day, sculptures were found broken in the ceramics room, even though the building was inaccessible to the public. Defendant was found asleep in a loft area of the ceramics building, near numerous items that belonged to DVC or its faculty members and were taken from the office buildings that were broken into. Finally, Wiegand found a metal crowbar in a ventilation duct directly above where defendant was sleeping.

Reviewing the evidence in the light most favorable to the judgment, we conclude the evidence was sufficient to establish that defendant perpetrated the vandalism. Defendant's contentions to the contrary would have us reweigh evidence, which we decline to do.

### DISPOSITION

The judgment is affirmed.

_____
Fujisaki, J.

WE CONCUR:


_____
Tucher, P. J.


_____
Rodríguez, J.


*People v. Hurtado* (A167684)

11